```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND


GREENE CORPORATION                   :
                                     :
v.                                   :   Civil Action WMN-05-3371
                                     :
SOUTHWESTERN BELL MOBILE             :
SYSTEMS, LLC d/b/a Cingular          :
Wireless, et al.                     :
```

**MEMORANDUM**

Before the Court is Defendants' Motion to Stay Proceedings and to Compel Arbitration and to Stay Obligation to Answer or Otherwise Respond.  Paper No. 16.  The motion is ripe for decision.  Upon a review of the pleadings and applicable case law, this Court determines that no hearing is necessary (Local Rule 105.6) and that the Defendants' motion should be granted.

**I.   BACKGROUND**

On October 1, 2003, Plaintiff Greene Corporation (Greene) entered into an Authorized Agency Agreement with Defendants, Southwestern Bell Mobile Systems, LLC, d/b/a Cingular Wireless, and Cingular Wireless, LLC (collectively Cingular).  Under the agreement, Cingular authorized Greene to sell its wireless communications services in the Baltimore/Washington region.  Cingular compensated Greene on a commission basis for the subscribers Greene enrolled.  In late April 2005, Cingular terminated Greene's contract after allegedly discovering that Green had inflated and manipulated its subscriber number counts.  Cingular terminated the contract under ¶ 8(k) of the agreement,

which gave Cingular the discretion to immediately terminate the agreement upon its determination that Greene inflated or otherwise manipulated its count of subscribers.  See Mot. Ex. A. In December 2005, Greene filed suit in the Circuit Court for Baltimore City alleging breach of contract.[1]  Later that month the suit was removed to this Court.  Cingular now argues that the agreement contained a mandatory arbitration provision and requests that this Court stay the litigation and compel arbitration.

**II.  DISCUSSION**

  A.  Governing Law

The parties disagree as to what law governs their present dispute.  Greene contends that Georgia law, in particular, the Georgia Arbitration Code (GAC) governs the resolution of the dispute, while Cingular contends that the Federal Arbitration Act (FAA) applies to the agreement.

Greene bases its argument on ¶ 24 of the agreement, which provides that, "[e]xcept to the extent governed by United States law that preempts state law, this Agreement shall be interpreted under and governed by the laws of Georgia irrespective of choice-of-law principles."  Mot. Ex. A.  Greene relies on North Augusta

---

[1] Greene also requested declaratory relief (Count II), demanded accounting (Count III), and requested a temporary restraining order and preliminary and permanent injunctions (Count IV).

2

Assocs. Ltd. P'ship v. 1815 Exch., Inc., 469 S.E.2d 759 (Ga. Ct. App. 1996), for the proposition that the FAA does not preempt the application of the GAC, where the parties' contract states that it is to be governed by Georgia law.  Opp'n 14.

The Georgia Court of Appeals based its decision in North Augusta on the United States Supreme Court's decision in Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468 (1989).  North Augusta, 469 S.E.2d at 761-62.  The contract at issue in Volt contained an arbitration clause and a choice-of-law clause, which provided that "[t]he Contract shall be governed by the law of the place where the Project is located."  Volt, 489 U.S. at 470.  The California Court of Appeal had construed the contractual provision to mean that the parties intended the California rules of arbitration, rather than the FAA's rules, to govern the resolution of their dispute.  Id. at 472.  The Supreme Court upheld the lower court's decision in concluding that, "the FAA [does not] prevent the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself. . . . Parties are generally free to structure their arbitration agreements as they see fit. . . . [They may] specify by contract the rules under which that arbitration will be conducted."  Id. at 479.

Cingular argues that despite the choice-of-law clause

3

contained in the agreement, the FAA still governs the present dispute.  Cingular supports its argument with the Fourth Circuit's decision in <u>Porter Hayden Co. v. Century Indemnity Co.</u>, 136 F.3d 380 (4th Cir. 1998).  The <u>Porter Hayden</u> court found that a choice-of-law provision requiring the general application of state law was insufficient to mandate the application of state arbitration law, as there was no clear contractual statement illustrating the parties intent for the application of state arbitration law.[2]  136 F.3d at 383.  In finding that the FAA applied, the <u>Porter Hayden</u> court noted that, "this may well be the best reading of the provision, since choice-of-law provisions typically embody the parties' choice of one state's laws over another's, rather than express a preference between federal and state law."  <u>Id.</u> at 384 n.5.

In <u>Porter Hayden</u>, the Fourth Circuit based its decision on the Supreme Court's decision in <u>Mastrobuono v. Shearson Lehman Hutton, Inc.</u>, 514 U.S. 52 (1995).  The <u>Porter Hayden</u> court cited to <u>Mastrobuono</u> when concluding that, "[t]he Supreme Court has [] squarely rejected the argument that a federal court should read a contract's general choice-of-law provision as invoking state law

---

[2] The agreement at issue in <u>Porter Hayden</u> contained a choice-of-law provision that required the parties to apply Maryland substantive law to the resolution of disputes arising out of the contractual relationship, it did not specify that the parties were to apply state arbitration law to such disputes.  136 F.3d at 383.

4

of arbitrability and displacing federal arbitration law. 136 F.3d at 382. In <u>Mastrobuono</u>, the Court held that a contract's choice-of-law provision specifying that the "entire agreement" would "be governed by the laws of the State of New York" was insufficient to show that the parties intended to invoke New York arbitration law. 514 U.S. at 58-60. The <u>Mastrobuono</u> Court noted that its decision in <u>Volt</u>, made six years prior, did not require a contrary result because the <u>Volt</u> Court affirmed the California Court of Appeal's decision only out of deference to that court's construction of its own state law. <u>Id.</u> at 60 n.4.

Because the choice-of-law provision in the present case states generally that the agreement should be interpreted under Georgia law and does not specify the parties intent to invoke the GAC rather than the FAA, this Court finds that the FAA governs the present dispute.

### B. <u>Application of the FAA</u>

In determining whether to compel arbitration under 9 U.S.C. § 4 of the FAA, a court "engages in a limited review to ensure that the dispute is arbitrable - i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." <u>Glass v. Kidder Peabody & Co.</u>, 114 F.3d 446, 453 (4th Cir. 1997). Cingular contends that the two substantive arbitrability questions must be answered in the affirmative. First, ¶ 34(e) of

the agreement states that the parties "agree to arbitrate any and all disputes and claims . . . arising out of or relating to this Agreement . . . ."  Mot. Ex. A.  Second, the facts of the present dispute - Cingular's termination of Greene for allegedly inflating and otherwise manipulating its subscriber numbers - arises from the agreement.  Greene does not contest that these two provisions are met, but argues that the arbitration clause cannot be invoked because Cingular did not satisfy the conditions precedent of the clause.  Paragraph 34 of the agreement requires that various meetings and steps be taken in the instance that a dispute arises.  Subsection e of ¶ 34 contains the arbitration clause and states, "If the matter has not been resolved pursuant to the aforesaid procedure, instead of suing in court, [the parties] agree to arbitrate . . . ."  Mot. Ex. A.  Greene asserts that Cingular failed to meet what it labels as the "conditions precedent" of the arbitration clause.  Because the arbitration clause was allegedly never invoked, Greene concludes that this Court should decide the dispute.

The Fourth Circuit has made clear that, if a court determines that the issues in dispute meet the two standards of substantive arbitrability, "it then must refer the matter to arbitration without considering the merits of the dispute.  All other issues raised before the court not relating to these two determinations fall within the ambit of procedural

6

arbitrability." Glass, 114 F.3d at 453.  One issue covered under "procedural arbitrability" is the question of "whether the unexcused failure to follow [grievance procedures] avoids the duty to arbitrate."  Id.  The Glass court followed the Supreme Court's 1964 decision in John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543 (1964), and "thirty years of [additional] Supreme Court and federal circuit court precedent" and held that issues of procedural arbitrability are for the arbitrator to decide. Id. at 454.

Greene cites to Howsam v. Dean Witter Reynolds, 537 U.S. 79, 83 (2002), for the proposition that "the 'question of arbitrability' is an issue for judicial determination unless the parties clearly and unmistakenly provide otherwise."  Greene fails to recognize that the Howsam Court later cites John Wiley and concludes that the phrase "question of arbitrability" has a limited scope under which issues of waiver and questions as to whether a condition precedent to arbitrability has been fulfilled are for the arbitrators to decide.[3]  537 U.S. at 83-85.

It is clear that the issue of whether Cingular waived the arbitration clause by allegedly failing to satisfy the conditions

---

[3] Greene tries to distinguish John Wiley based on its facts. Not only is that effort unavailing, but Greene fails to recognize that the proposition of John Wiley - issues of procedural arbitrability are for the arbitrator to decide - has been adopted in multiple cases where the facts are quite similar to those of the present case.

precedent is a question of procedural arbitrability which is for the arbitrator to decide.[4]

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to stay litigation and compel arbitration will be granted. A separate order consistent with this memorandum will issue.

                                              /s/
                              William M. Nickerson
                              Senior United States District Judge

Dated: April 25, 2006.

---

[4] Greene cites two cases from other circuits in support of its argument that under the FAA a party to an agreement cannot demand arbitration unless it has complied with the dispute resolution process defined by the agreement's alternative dispute resolution clause – HIM Portland, LLC v. Devito Builders, Inc., 317 F.3d 41 (1st Cir. 2003) and Kemiron Atlantic, Inc. v. Aquakem Int'l, Inc., 290 F.3d 1287 (11th Cir. 2002). Any applicability of the aforementioned cases hinges, in part, on whether there are actually conditions precedent to the arbitration clause in the present case that were not followed, which, as previously noted, is a question for the arbitrator to decide.